IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ALFONSO GRAVES, JR.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| **vs.** ) | |
| ) | Civil Action Number |
| **MICHAEL J. ASTRUE**, **Commissioner** ) | **4:08-cv-0208-UWC** |
| **of the Social Security Administration,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION**

Plaintiff Alfonso Graves, Jr. ("Plaintiff") brings this action for a period of disability and disability insurance benefits pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").

This Court finds the Administrative Law Judge ("ALJ")did not fully develop the record.  The ALJ also failed to consider the combined effects of Plaintiff's multiple impairments; he found that Plaintiff's back pain is not a severe impairment without substantial support in the record; and he failed to give the finding of the Veterans Administration ("VA") the deference to which it is due.

Moreover the ALJ's inappropriate remarks behavior during the hearing calls

into question whether the hearing was conducted by a fair and impartial tribunal.

For the reasons which follow, the decision will be reversed, and the case remanded to the Commissioner.

## I.  Procedural History

Plaintiff filed an application for disability, disability insurance benefits, and Supplemental Security Income (SSI) on October 4, 2005.  These applications were denied on January 26, 2006 through state agency decision.  On July 17, 2007, Plaintiff appeared at a hearing before an Administrative Law Judge ("ALJ") and on September 6, 2007, the ALJ denied benefits. Having timely pursued and exhausted his administrative remedies, Plaintiff filed an action for judicial review in federal district court pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## II.  Factual Background

At the time of the hearing, was forty-seven years old and had a high school education.  He completed some college course work. He is also a veteran of the U.S. Army from 1989-1993 with service in the Persian Gulf (R. 171.)

Plaintiff has extensive past work experience, embracing at least twenty-five years. His work record includes experiences as a security guard, jailer, dishwasher/cook, warehouse worker, machine operator, mover/truck driver, and carpenter/construction worker.

Plaintiff has not performed substantial gainful activity since his amended onset date, September 21, 2005. (R. 15.)

The record reflects Plaintiff's continued cocaine and marijuana use. (*See e.g.*, R. 270.)

Plaintiff alleges the following disabling conditions: mental problems, chronic low back pain, heart problems, headaches, poor circulation, high blood pressure, depression, and Persian Gulf Syndrome. (Pl.'s Br. at 1; *see also* R. 132.)

Treatment History

On September 21, 2005, Plaintiff presented to Yuma Medical Center in Arizona complaining of chest pain. After examination, he was diagnosed as having hypertension and chest pain. (R. 116.)

On December 17, 2005, Plaintiff presented to Dr. Naveed Vehra, a neurologist, complaining of chest pains, irregular heart beats, and chronic back pain. Plaintiff's blood pressure was 120/90 and, upon examination, his heart appeared normal. Dr. Vehra noted tenderness in the low back, with reduced range of motion in the dorsolumbar area. Accordingly, Dr. Vehra diagnosed Plaintiff with chronic back pain and palpitations/angina. (R. 152.)

On January 25, 2006, Plaintiff presented to the VA complaining of fatigue, headaches, poor memory and concentration, post-exercise malaise, joint and muscle

pain, poor sleep, law grade fever, chest pain, skin rash, and hypertension. He underwent a VA examination under Gulf War guidelines and a skin examination. (R. 171-174.) Plaintiff used a cane at the time of the examination due to his chronic low back pain. Plaintiff was diagnosed with chronic fatigue syndrome, atypical chest pain, contact dermatitis, tooth decay, hypertension, and severe athletes foot. (R. 174.)

On February 1, 2006, Plaintiff was seen for a follow up for his hypertension. His blood pressure was 120/78 and he was diagnosed with controlled hypertension. He was prescribed Fosinopril (hypertension), HCTZ (hypertension), Ibuprofen, and potassium chloride.

On March 1, 2006, Plaintiff was treated for a right ear infection, complaints of low back pain and a syncopal episode (fainting spell). Plaintiff was diagnosed again with low back pain and syncope, due to a combination of pain and orthostasis (standing upright). (R. 198-200.)

On May 16, 2006, Plaintiff presented to the VA, complaining that he may have had a stroke because his eyes had rolled back in his head, he had passed out, vomited, and lost control of his bladder and bowel function. Plaintiff's blood pressure 122/76. (R. 192-193.) It was noted that Plaintiff used a cane on this visit to the hospital. Plaintiff tested positive for cocaine.

On June 22, 2006, Plaintiff presented to the VA neurology clinic with a blood pressure of 89/62. (R. 184-188.) Plaintiff had 5/5 motor strength except in the lower right extremity, which was considered a 4/5 and limited by back pain. (R. 187.) The neurologist concluded that the description of plaintiff's fainting episode does not represent an epileptic seizure. Furthermore, the neurologist, Dr. Anthony P. Nicholas, speculated that it was equally likely that the spell was a result of cocaine use or of chronic pain and depression and anxiety. (R. 187.)

On October 10, 2006, Plaintiff was again seen for a follow up relating to his seizure/fainting spell. Plaintiff again reported symptoms of depression and low back pain. It was noted that the MRI, which had been requested in March after his complaints of chronic low back pain, had still not been done. (R. 180.) Plaintiff was diagnosed with controlled hypertension, cocaine abuse, depression, and chronic low back pain. (Id.) Plaintiff was referred to the outpatient substance abuse clinic. (R. 180.)

On December 15, 2006, an MRI of Plaintiff revealed bilateral neural foraminal stenosis at L4-5 and L5-S1, with L4 and L5 nerve root compression and a lateral disc bulge at L3 impinging on the L3 nerve root. (R. 154-155.)

On July 16, 2007, Plaintiff presented to the VA complaining of ear trouble. The examiner diagnosed him again with chronic low back pain, tinea, hypertension,

and cocaine dependence.

On July 16, 2007, Plaintiff was seen by psychologist William Beidleman. Dr. Biedleman noted that Plaintiff was experiencing significant psychological distress. He diagnosed Plaintiff with Post Traumatic Stress Disorder ("PTSD") and dysthymic disorder. (R. 222)

On July 24, 2007, Dr. Alan Blotky of the Alabama Psychotherapy and Wellness Center, performed a psychological evaluation on Plaintiff on referral by his attorney. Plaintiff informed Dr. Blotky that he was seriously depressed, that he had been taking Trazadone for depression, and that he had been abusing marijuana and cocaine since 2006 as a result of his medical problems. (R. 235.) Dr. Blotky diagnosed him with severe and recurrent depression, which he characterized as a "serious affective illness" that he had suffered from since 1992. Dr. Blotky indicated that Plaintiff had marked and extreme mental limitations.

Dr. Blotcky performed the only residual functional capacity ("RFC") evaluation in the record. He rated Plaintiff "extreme"[1] in (1) deficiencies of concentration, persistence, or pace resulting in failing to complete tasks in a timely manner, (2) his ability to respond to customary work pressures, and (3) his ability to respond appropriately to supervision in a work setting. He rated Plaintiff as

---

[1] An "extreme" rating connotes a severe impairment of the ability to function. (R. 238.)

6

"marked"[2] in (1) the estimated degree of his difficulty in maintaining social functioning, (2) his ability to respond appropriately to co-workers in a work setting, and (3) his ability to perform repetitive tasks in a work setting. Plaintiff was rated "moderate"[3] in the following areas : (1) restriction of the activities of daily living, (2) the ability to understand, carry out, and remember instructions in a work setting, and (3) the ability to perform simple tasks in a work setting. (R. 238. 239.)

The VA has awarded Plaintiff a 10% disability for chronic fatigue syndrome, and a 10% disability for bilateral tenis pedis. (R. 246.)

The SSA's vocational expert (VE") testified that if Plaintiff has moderately severe pain, there are no jobs which he can perform. (R. 281.)

The ALJ did not pose to the VE any hypothetical.

### III. The ALJ's Decision

The ALJ rendered an adverse decision on Plaintiff's claim on September 6, 2007.

Despite Plaintiff's extensive medical evidence, the ALJ concluded that Plaintiff suffers only from the severe impairments of PTSD and dysthymic disorder,.

---

[2] A "marked" restriction connotes an impairment which seriously affects ability to function. (R. 238.)

[3] A "moderate " restriction is an impairment an impairment which affects but does not preclude ability to function. (R. 238.)

(R. 24.) The ALJ found these impairments were not disabling because Plaintiff could perform all of his past relevant work at all of his former physical levels, even though he had some mental limitations. (R. 27-29, 30.)

In reaching this conclusion, the ALJ found that Plaintiff's subjective complaints concerning his impairments and their impact on his ability to work were not totally credible. (R. 27-29, 30.)

The ALJ rejected Dr. Blotcky's RFC evaluation in part because he was paid for his examination of Plaintiff; and Plaintiff was referred to this psychologist by his counsel. (R. 28).

The ALJ found a residual functional capacity of "no physical limitations" as a result of his express finding that Plaintiff's "alleged back pain is not a severe medically determinable impairment." (R. 25.) The ALJ also determined that Plaintiff's alleged chest pain, back pain, headaches, and memory loss were not severe medically determinable impairments. For example, the ALJ opined that "back pain, like chest pain, is a symptom rather than a medically determinable impairment, and no symptom by itself can establish the existence of such an impairment." (R. 25.)

The ALJ did not consider Plaintiff's VA disability ratings.

### Inappropriate ALJ Comments During the Hearing

At one point in the hearing, the ALJ said to Plaintiff: "Don't be stupid." R.

256. At another point, the ALJ made comments about Plaintiff's use of a cane at the hearing:

> ALJ: You got to [sic] cane today. How long have you been using the cane, Mr. Graves?
>
> CLMT: Since December of nine, 2003.
>
> ALJ: Don't be bull jiving me on this one. You went in for your CE, you walked without difficulty. You had no difficulty getting on and off the table. No indication that you had a cane. Now come on.
>
> CLMT: I have - -
>
> ALJ: Don't do that to me.
>
> CLMT: I had my cane in there at the - -
>
> ALJ: You did.
>
> CLMT: Yes sir. And I also - -
>
> ALJ: This claim a quote from the report. This claimant was comfortable in walking without difficulty.
>
> CLMT: My back went out, sir, during those exercises. And I couldn't complete my examination.
>
> ALJ: Yeah. He says assistive device. He says non-applicable. I think you're bull, you're feeding me a line about this. And I'm not trying to be argumentative with you. I just don't believe in keeping secret. I, I put it on the table.
>
> CLMT: Yes, sir.
>
> ALJ: Yeah. I'm, I'm not going to do a sneak attack. I look a gut in the

>     eye and tell him when I think he's not. And I think you're, I think you're giving me a line of baloney about that cane. You having been use, if you've been using that since 2003, why didn't you have it when you, when you went in to see Vera[4] on December 17th, '05?
>
> CLMT:   I always have my cane, sir.

(R. 260.)

At another point in the hearing, the ALJ said to the Plaintiff: "People think they got to come in here and put on a show for me. ....And part of the show is the cane." (R. 262.)

The record reflects that although Plaintiff apparently did not have a cane when he saw Dr, Vehra in 2005, he had a cane when he visited VA doctors on January 25, 2006, February 1, 2006, March 1, 2006, May 16, 2006, and July 24, 2007. (R. 173, 193, 199, 204, 236.)

## IV.  Controlling Legal Principles

A disability claimant has a heavy, but not insuperable, burden to establish entitlement to benefits. *Mims v. Califano*, 581 F.2d 1211, 1213 (5th Cir. 1978). The district court's standard or scope of review is limited to determining whether the substantial evidence support's the Commissioner's decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Additionally, the Court must determine whether proper

---

[4]Apparently, the ALJ's reference is to Dr. Naveed Vehra. (R. 152.)

legal standards were applied. *Lewis v. Callahan*, 125 F. 3d 1436, 1439 (11th Cir. 1997) (citing *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987)).

Substantial evidence is more than a scintilla, but less than a preponderance. It is such evidence a reasonable mind would accept as adequate to support a conclusion. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). In contrast, the Commissioner's legal conclusions are more closely scrutinized. "The [Commissioner's] failure to apply the correct law or to provide the reviewing Court with the sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-45 (11th Cir. 1991).

Applicable agency regulations require a sequential evaluation of adult disability claims. 20 C.F.R. § 404.1520 (1983). The first consideration is whether the claimant is working. If the claimant is working, she is not disabled. If the claimant is not working, the Commissioner must determine whether the claimant suffers from a severe impairment. If the claimant does not suffer from a severe impairment, she is not disabled. If the claimant suffers from a severe impairment, then the Commissioner must consider whether the claimant meets any of the listings in 20 C.F.R. pt 404, subpt P, app. 1 ("Listing"), which details "impairments which are considered severe enough to prevent a person from doing any gainful activity." 20

C.F.R. § 404.1520(a).  *See Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985).  If the claimant's medical profile meets the criteria for an impairment in the "Listing," then the claimant is disabled by law and no further inquiry is necessary.

When a claimant's "severe" impairment does not fall within a Listing, but nonetheless restricts her ability to perform basic work activities, the ALJ must then assess the claimant's residual functional capacity and the range of work activities that the claimant could perform despite his impairments.  This evaluation must give consideration to claimant's subjective complaints, accounting for nature of pain, medication, treatment, functional restrictions, claimant's daily activities, and other relevant factors.  20 C.F.R. § 404.1512.

Additionally, pursuant to 20 C.F.R. § 404.1523, the ALJ is required to consider the disabling effect of multiple impairments:

> In determining whether your physical or mental impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all your impairments without regard to whether any such impairments if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.  If we do not find that you have a medially severe combination of impairments, we will determine that you are not disabled.

A statement that by the ALJ that he considered all of the evidence is not sufficient; the ALJ has a duty to make clear the specific reasons for his decision. *Cowart v.*

*Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981)

Pain alone can be disabling. When a claimant claims disability based solely on pain, a three-part standard is utilized in assessing the credibility of his testimony. The claimant must establish (1) evidence of an underlying impairment; and either (2) objective medical evidence to confirm the severity of pain alleged, or (3) a finding that the impairment is of such a severity that it can be reasonably expected to cause the pain alleged. *See, e.g.*, *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986); *Marbury v. Sullivan*, 957 F.2d 837 (11th Cir. 1992).

A medical opinion obtained by the attorney for a disability claimant may not be disregarded simply because of the attorney referred his client to the physician. *Miles v. Chater,* 84 F.3d 1397, 1399-1401 (11th Cir.1996).

Generally, while not binding on the Commissioner, the disability findings of another agency are entitled to great weight. *Falcon v. Heckler,* 372 F.2d 827, 831 (11th Cir.1984). Specifically, a VA rating of disability should be given great weight, although it is not binding. *Olson v. Schweiker,* 663 F.2d 1233, 1241 (11th Cir.1983).

Social Security proceedings are inquisitorial rather than adversarial. Therefore, the ALJ has the duty "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 120 (2000). Indeed, the ALJ has a basic duty to fully develop the record. *Cowart v. Schweiker*, 662 F.2d 731, 735-

36 (11th Cir. 1981)

## V.  Analysis

The Commissioner's denial of benefits must be reversed and remanded.

Indubitably, the ALJ must consider the disabling effect of multiple impairments. *See,* 20 C.F.R. § 404.1523. Here, the ALJ found that Plaintiff had two severe impairments; and he made PTSD and dysthymic disorder findings separately. But in no portion of his opinion, did he make findings on the combined effects of these two severe impairments. (R. 21.)

Moreover, after concluding that Plaintiff suffered from PTSD and dysthymic disorder, the ALJ opined that Plaintiff's social functioning was only mildly impaired because of his mental limitations. The only expert evidence on that issue was that provided by Dr. Blotcky and rejected by the ALJ. But there is no evidence that the ALJ has any expertise in this field.

Notably, the ALJ failed to pose to the VE any hypothetical question concerning the effects of Plaintiff's impairments on his ability to perform his past relevant work or any other jobs in the national economy. Dr. Biedleman, whose opinion the ALJ fully credits, found Plaintiff to be in significant psychological distress. (R. 222.) Instead on properly considering the expert evidence before him, or fully developing the record on Plaintiff's RFC, the ALJ simply and impermissibly substituted his

personal opinion.

Substantial evidence does not support the ALJ's finding that Plaintiff's back pain is not a severe impairment. The VA's Dr. Vehra diagnosed him with this condition; and he complained of it on a recurring basis. (R. 152.) The uncontradicted medical evidence reflects a disk bulge impinging on aa nerve root - which would certainly provide an objective medical basis for the pain. (R. 155.) Incredibly, the ALJ specifically found that "there is objective evidence of a medically determinable back impairment — lumbar disc bulges with associated foraminal stenosis." (R. 25.) To the extent that the ALJ discredited Dr. Vedra's opinion, and the record does not reflect that he did, he should at a minimum have developed the record with medical evidence that Plaintiff's impairment is not sufficiently severe as to impact on his ability to work. This he did not do; an again substituted his personal opinion for that of a medical expert in this area.

The ALJ erred by failing to factor into his decision the VA's disability determination.

When the case is remanded, it should be assigned to a different ALJ. The improper remarks made to Plaintiff lend themselves to the perception that the ALJ was not impartial in his decision. To preserve the appearance of impartiality, a different

ALJ is required. *See,* 28 U.S.C. § 455.

## V. Conclusion

By separate order, the Commissioner's decision denying benefits will be reversed, and the case remanded for assignment to a different ALJ and further proceedings not inconsistent with this Memorandum Opinion, including without limitation, the development of a full record which takes into consideration (1) the combined effects of Plaintiff's impairments – which include chronic back pain, (2) reconsideration of the of the RFC evaluation of Dr. Blotcky and such other RFC evaluations as may be appropriate, and (3) the VA's disability award to Plaintiff.

_____
U.W. Clemon
United States District Judge